**F I L E D**
**United States Court of Appeals
Tenth Circuit**

**APR 1 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ALI BANKI; SHANNON BANKI,

Plaintiffs-Appellants,

v.

PROVIDENT INDEMNITY LIFE
INSURANCE COMPANY, a
corporation; HEALTHPLAN
SERVICES, INC., a corporation,

Defendants-Appellees.

No. 03-5099
(D.C. No. 00-CV-886-EA)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

* After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Ali and Shannon Banki appeal from the denial of their renewed motion for judgment as a matter of law and the denial of their motion for a new trial. The Bankis' brief argues the following three issues: (1) whether the jury verdicts were against the weight of the evidence; (2) whether the district court erred by instructing the jury on corporate internal negligence; and (3) whether the district court erred by preventing the Bankis from introducing evidence of the defendants' alleged violation of the Oklahoma Third Party Administrator Act. We have jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRM** .

# I

In August 1996, Ali Banki and his business partner, Sasan Rastami, subscribed to Provident Indemnity Life Insurance Company ("Provident") insurance plans. At the time their insurance plans were initiated, Banki's and Rastami's coverages were placed on a "list bill." A list bill provides that all participants in the insurance program are invoiced on a single bill for their insurance coverage, and that when payments are made by the insureds, the payments are credited to the total balance owed on the list bill. In February 1998, Healthplan Services, Inc. ("Healthplan") entered into a service agreement to administer claims on Provident's behalf. Healthplan began serving as a third-

party administrator of Provident's insurance programs, including Banki's policy, the following month.

In February 1998, the Bankis and Rastami discontinued paying their premiums and allowed their insurance coverage to lapse. Neither Banki nor Rastami notified Provident of their decision to discontinue their medical insurance. On August 11, 1998, Banki received notification that his policy was in arrears and had been canceled, but that he was eligible for reinstatement if he tendered payment for the past due amount of $2,746.50. The Bankis paid the past due premiums on August 17, 1998. On August 24, 1998, Banki was diagnosed with colon cancer.

The Bankis were notified that their payment of $2,746.50 was insufficient to bring the balance of the list bill account into good standing. Mrs. Banki contacted a Healthplan representative to inquire about the status of the insurance plan. The representative explained that the payment was insufficient to reinstate the policy. Mrs. Banki followed up with multiple phone calls to Healthplan representatives concerning the Bankis' insurance plan; the Bankis' coverage was reinstated in September 1998. Though the Bankis made payments in September, October, November, and December 1998, part of each payment was being split to pay the premiums for Rastami because of the list bill arrangement. The Bankis submitted claims in 1998 and 1999 that were not paid. In December 1999, the

Bankis' attorney contacted Provident regarding the Bankis' insurance coverage and payment of the Bankis' medical bills. The parties corresponded in early March 2000 but did not resolve the dispute.

Filing suit against Provident and Healthplan in state court on June 30, 2000, the Bankis alleged that Provident breached the insurance contract, and that Healthplan and Provident breached their duties of good faith and fair dealing. The case was removed to federal court in October 2000. In April 2001, the Bankis filed an amended complaint adding Healthplan as a defendant. On November 25, 2002, the district court granted Healthplan's motion for summary judgment on the Bankis' claim for breach of contract.

Although Provident had agreed to reinstate Banki's coverage retroactively, to waive the unpaid premiums, and to pay all of the unpaid medical bills, the Bankis proceeded to trial to establish the defendants' liability on their claims and to recover additional unspecified economic damages in addition to damages for emotional distress and punitive damages. The matter was tried before a jury in January 2003. At the conclusion of the evidence, all parties orally moved for judgment as a matter of law; the court denied each motion. On January 24, 2003, the jury returned verdicts in favor of Provident on the breach of contract and breach of the duty of good faith and fair dealing claims and in favor of Healthplan on the breach of the duty of good faith and fair dealing claim. The district court

denied both the Bankis' renewed motion for judgment as a matter of law and their motion for a new trial; this appeal followed.

## II

We review de novo the denial of the Bankis' renewed motion for judgment as a matter of law, applying the same standard as the district court. McKenzie v. Renberg's, Inc., 94 F.3d 1478, 1483 (10th Cir. 1996). "A . . . renewed motion for judgment as a matter of law must be granted if, viewing the evidence in the light most favorable to the nonmoving party, all the evidence and the inferences to be drawn from it are so clear that reasonable persons could not differ in their conclusions." Sanjuan v. IBP, Inc., 160 F.3d 1291, 1298 (10th Cir. 1998) (quotation omitted). An abuse of discretion standard governs our review of the district court's denial of a motion for a new trial. Id. at 1296. "Where a party moves for a new trial on the ground that the jury verdict is not supported by the evidence, the verdict must stand unless it is 'clearly, decidedly or overwhelmingly against the weight of the evidence.'" York v. Am. Tel. & Tel. Co., 95 F.3d 948, 958 (10th Cir. 1996) (quotation omitted).

### A

The Bankis assert that the jury verdict is against the weight of the evidence on their breach of contract claim because Provident failed to properly credit the

-5-

Bankis' premium payments, canceled their coverage, and refused to pay medical claims in a timely manner. They also contend that the jury verdicts on their claims for breach of the duty of good faith and fair dealing were against the weight of the evidence because Provident and Healthplan's conduct demonstrated a deliberate and reckless disregard for the Bankis' rights.

We disagree. It is apparent from the record that the evidence presented at trial provided a reasonable basis for the jury verdict on the breach of contract claim. The evidence demonstrated, for example, that the Bankis failed to pay their premiums from February until August 1998, thereby allowing a significant balance to accrue. It also showed that Provident credited the Bankis' premium payments according to the list bill policy set up by Banki, and that Provident canceled the policy because Banki's payments were insufficient to cover the balance on the list bill.

At trial, the jury learned that in 1996, Banki signed a list bill request form for himself and Rastami, that Banki stopped making premium payments beginning in February 1998, and that by August 1998 he owed $2,746.50. It was demonstrated, moreover, that at no time did Banki or Rastami notify Provident of any desire to end the list bill arrangement. Because the list bill arrangement was still in place, the premium payments submitted by Banki were split between his policy and Rastami's policy. Banki's payments were therefore insufficient to

bring the policy out of arrears, and as a consequence, the Bankis' policy was canceled.  Accordingly, it was reasonable for the jury to conclude that Provident had not breached its contractual duties to the Bankis.

The jury's conclusion that defendants did not breach their duty of good faith and fair dealing is similarly supported by the record.  Provident and Healthcare presented evidence that a legitimate dispute existed concerning the Bankis' insurance policy and the coverage provided.  Moreover, the defendants presented evidence that they were responsive to the Bankis' inquiries. [1]  We therefore conclude that the jury verdicts in favor of Provident on the Bankis' breach of contract claim and in favor of both defendants on the Bankis' breach of the duty of good faith and fair dealing claim were not clearly, decidedly or overwhelmingly against the weight of the evidence.

---

[1]     For example, in September 1998, after Mrs. Banki called to ask about why the August premium payment had not been credited in full to their account, Healthplan, on behalf of Provident, reinstated the Bankis' policy.   In December 1999, Healthplan received a letter from the Bankis' attorney inquiring about the status of their policy; Healthplan responded in January 2000, explaining that the Bankis' policy was part of a list bill.  Healthplan asked Banki whether he had asked to be disassociated from the list bill, and Banki's attorney wrote back that the Bankis did not know what a list bill was or what it meant to be disassociated from it.  Healthplan wrote back that it would investigate and respond.  Healthplan then transferred the file to Provident.  Provident investigated and concluded that there had been some confusion regarding the way the premiums were to be paid on the list bill policy; it therefore reinstated the policy retroactive to January 1998, waived any unpaid premiums, and paid for all of the Bankis' outstanding medical claims.

-7-

**B**

As to the Bankis' contention that the district court erred by giving the jury an instruction on "corporate internal negligence" because it "is not a valid legal defense to breach of contract," Aplts' Br. at 26, "[w]e review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. McClatchey, 217 F.3d 823, 834 (10th Cir. 2000) (quotation omitted). The instruction at issue stated:

> Corporate internal negligence alone is not bad faith. You must consider whether the conduct of the insurer and/or third party administrator in determining coverage in the handling of plaintiffs' claims rises to the level of bad faith as defined for you in the previous instructions.

Aplts' App. at 245.

The corporate internal negligence jury instruction accurately states Oklahoma law. See Peters v. American Income Life Insurance Co., 77 P.3d 1090 (Okla. Ct. App. 2002). In the instant case, the district court gave this instruction to provide additional guidance for the jury in its consideration of the claim for breach of the duty of good faith and fair dealing, not as a defense to breach of contract. We conclude, therefore, that the district court did not abuse its discretion in giving this instruction to the jury.

## C

Finally, the Bankis argue that they should have been allowed to present evidence to the jury that the defendants violated the Oklahoma Third Party Administrator Act ("OTPAA"), 36 O.S. § 1449, in order to demonstrate the defendants' bad faith. Because the district court found that the Bankis had failed to present any authority indicating that a violation of the OTPAA is relevant to the determination of bad faith, the district court did not allow the evidence.

"We are generally reluctant to overturn evidentiary rulings of the trial court. We review such rulings only to determine if the trial court abused its discretion in limiting the scope of the evidence presented." Messina v. Kroblin Transp. Sys., Inc., 903 F.2d 1306, 1310 (10th Cir. 1990). Because the Bankis failed to present any authority that a violation of the OTPAA is relevant to the determination of bad faith, we conclude the district court did not abuse its discretion in preventing the admission of such evidence.

## III

The Bankis have failed to demonstrate that "viewing the evidence in the light most favorable to the nonmoving party, all the evidence and the inferences to be drawn from it are so clear that reasonable persons could not differ in their conclusions," Sanjuan, 160 F.3d at 1298 (quotation omitted); as a result, the

Bankis are not entitled to judgment as a matter of law on their claims.

Accordingly, the judgment of the district court is **AFFIRMED** .

Entered for the Court

Carlos F. Lucero
Circuit Judge